BILL WALKER v. THE STATE.

1. VERBAL CONFESSIONS.—In this state the rule has long been established that verbal confessions of guilt are to be received with great caution.

2. SAME.—Under the regulations prescribed by our Code for the admission of confessions made by a party in custody, if, in consequence of information given in his statement, material facts conducing to establish his guilt be discovered, it is competent for the state to prove, not only his verified statement thereof, but also any confession of the crime itself made in his statement. At common law such material facts were competent evidence, but not the confession of the crime itself.

3. SAME—CASE STATED.—The accused, while in legal custody, and not cautioned that his statements might be used against him, confessed to the officer that he killed the deceased, and stated material circumstances, which were proved to be true, respecting the condition and surroundings of deceased when found wounded and dying. But such facts and circumstances were not discovered in consequence of the statement of the accused, and it was proved that he might have learned them in the neighborhood, and that he was menaced with mob violence while in custody. Held, that it was error to admit the confession in evidence against the accused.

APPEAL from the District Court of Robertson. Tried below before the Hon. S. FORD.

The deceased, James Monroe, resided in Robertson county, about three miles from the town of Bremond. On Sunday morning, August 19, 1876, he was found in his house, prostrate and speechless from mortal wounds inflicted on the head. He died during the day, but without being able to communicate anything.

Susan Smith was the first person who discovered his condition. She testified that she lived near him, and milked his cows for him. That on the Sunday morning in question she went to milk, and went to his house and called him, but he did not answer, and presently she heard a groaning noise in the house. Then she called Mr. Thompson and told him to go and see what was the matter with Mr. Monroe. He opened the door of the house and went in, and directly came out again and got his horse, and went for a

doctor. Witness then looked in at the door and saw Mr. Monroe lying on his bed and covered with blood. A bloody pair of pants were behind the door; a trunk which had been broken open was in the room. It had a key in it which would not unlock it, and another key was lying on the floor.

Thompson, the person who, according to Susan Smith's testimony, was the first person who entered the house of the deceased, was not introduced, nor his absence accounted for.

The opinion of this court sets out the material parts of the confession and accompanying statements of the accused which were offered by the state and allowed by the court below to go to the jury, in spite of the objections interposed in behalf of the accused by the counsel who, acting under appointment by the court below, conducted the defense in that, and maintains the appeal in this, forum.

On the trial, moreover, some collateral facts were deposed by different witnesses, which, independent of the confession and statements of the accused, were relied on by the prosecution as indicating him to be the perpetrator of the murder.

When arrested, the accused was found in possession of $7, part of which was a $5 bill, which had a hole in one end of it as though perforated with a railroad conductor's punch. The state introduced a witness to prove that he paid this bill to the deceased a few days before the murder. The witness, however, was not equal to the emergency. He stated that, a short time before the murder, he paid to the deceased three $5 bills; that about the same time witness had a $5 bill which was perforated like the bill found on the accused, and resembled that bill in other respects; but he could not state whether the perforated bill was one of the three paid by him to the deceased.

When arrested, in the evening of the next day after the murder, the accused was wearing gray pants and a white shirt. A merchant at Bremond testified that early in the morning of the day of the murder the accused purchased a

pair of gray pants and a white puffed shirt.    Another witness proved that the accused had been living at his house, but left there Thursday night before the Sunday on which the deceased was found in a dying condition, and returned to witness' house early that Sunday morning.    That when accused left witness' house he was wearing very dirty old clothes, but had on a new suit when he came back.    This witness further testified that some clothes were found in the woods near his house, with blood on them ; that the blood was on the front of the pants, below the waist ; that they belonged to the accused, as witness knew from " the fact that they were dirty, and the defendant had been digging a well before he left witness' house ;" that, when the accused left, he said he was going to Bryan to see his wife.

The jury found the accused guilty of murder in the first degree, and assessed his punishment at death.

*F. H. Prendergast,* for the appellant..    The state did not pretend that the confessions in this case were admissible, except under the last clause of the statute ; that is, that the defendant, in his confessions, stated sufficient facts that were found to be true to let in the entire confessions. Then we say the rule is given at " common law," by which we measure its admissibility ;, that the confession of the *corpus delicti*—of the crime itself—is not admissible, and only so much of the confession as is found by other evidence to be true is admissible.    Archb. Cr. Pl. 144 ; 2 Russ. on Cr. 861, 862, and note ; Whart. Cr. Law, 257.

In this case at bar the court held that, because some of the facts confessed were found to be true, the *entire confession* was admissible.    If this were the law, then there would be no rule by which we could determine what amount of corroboration was sufficient to let in the entire confession.    The district judge who tried the case of *Strait* v. *The State,* 43 Texas, 488, refused to admit the entire confession.

Chief Justice Roberts, in commenting upon this action of the court, says: "Whilst the court admitted so much of the statement as was shown to be true, the jury were cautioned to consider them only so far as proven by other testimony to be true. The whole question as to what was proved was thus properly referred to the jury."

In *Greer* v. *The State*, 31 Texas, 130, the defendant was charged with having stolen a watch, and while in custody he confessed that he stole it, and went and showed where it was, under some boards. The entire confession was allowed to go to the jury. Hamilton, J., says: "We are not at liberty to say that the jury looked alone to the fact that the appellant was able to show where the stolen property was secreted, without reference to his confession of the theft, which was permitted to be given in evidence, contrary to the express provisions of the Code of Criminal Procedure." And he further says: "What we are to determine is, whether testimony was admitted contrary to law, upon which, in whole or in part, the jury may have based their verdict; and of this there is no doubt."

We have been unable to see why this case of *Greer* v. *The State* was not decisive of the one now before the court. If there is a distinction, no one has attempted to point it out to us, and we confidently believe that the case of *Greer* v. *The State* will have to be overruled before the judgment against Bill Walker will be allowed to stand. In both cases there was a confession of facts that were found to be true, and in both cases there was a confession of the crime itself. In the case of *Greer* v. *The State* the court says this last was improperly admitted, and reversed the case, and it only remains to apply the law there announced.

In *Warren* v. *The State*, 29 Texas, 372, the defendant asked the court to give a certain charge on confessions, which the court gave, with the qualification that, "if some of the facts confessed were found to be true by other evi-

dence, the jury may consider them all true." And Don-
ley, J., for the court, reversed the case for error in this
qualification.

Now, we think that the rule may be clearly deduced from
the above cases that, where a confession is sought to be
introduced because certain facts confessed are found to be
true, only so much of the confession is admissible as is
found by other evidence to be true. It will be remembered
in this case the court admitted, not only the facts and cir-
cumstances found to be true, but also the confession of the
crime itself.

There is another reason for not admitting the confessions,
which did not occur to me on the trial, and which may have
some force. The prisoner, in personal danger and under
arrest, announced his willingness to confess, and did make
several confessions before he made the confessions which
are relied on as evidence. Now, if the witness at this time
had asked him some leading question—some question assum-
ing his guilt—of course he would have given the answer
suggested, whether he knew it to be true or not; and it is
shown that the witness asked him some questions. He
asked the defendant why he did not take the keys, and
defendant said, because they would not fit the trunk.

We know that under the common law confessions are
admissible, though they be made in answer to questions
which assume the prisoner's guilt (Joy on Confessions, side
note, p. 42); but we think that this applies to cases where
there is no compulsion or persuasion. Now, it will be
remembered that in this case the witness to whom the con-
fessions were made said he knew at the time the confes-
sions were made to him how the things were situated in and
around Monroe's house; that he had seen them on the Sun-
day morning after the murder. Of course, then, if the wit-
ness had suggested these things in his questions to the pris-
oner, the prisoner would have answered in accordance with

the suggestions.   Then the entire theory of corroboration is defeated.   It is not shown that such was the case in this case, but it by no means appears clear that it was not.

Whether there is evidence is a question for the judge; whether it is sufficient or not is a question for the jury.   1 Greenl. on Ev., sec. 49.   In this case the judge said, without qualification, that the entire confession was evidence; then the jury could only say whether it was sufficient or not.   What jury would fail to convict after a confession of guilt, even though extorted, had gone to them unexplained and unlimited?   And this brings us to the other assignment.

The court did not charge the law applicable to the evidence.

By the statute. (Pasc. Dig., Art. 3059) it is made the duty of the court, in a felony case, to charge all the law applicable to the case, whether asked or not.

It was not necessary for us to have "excepted" to this action of the court.   See *Bishop* v. *The State*, 43 Texas, 398, at the bottom ; and *Adams* v. *The State*, 34 Texas, 527.

When we consider the time that intervened between the commission of the murder and the confessions, and the abundant opportunities the defendant had for learning from others the facts which he confessed—that he lived in the immediate neighborhood where the murder was committed ; that the crime was talked of a great deal ; that there was a crowd of people at the examining trial at Bremond — we think, under these circumstances, the judge should have charged the jury that, if they believed the defendant had heard from others the position of the things in and around Monroe's house, and was enabled, in that way, to state them, they should disregard them.   Just such a charge as this, under very similar circumstances, was commended as exhibiting a laudable caution, in the case of *The State* v. *Guild*,

5 Halst. 188, referred to in 1 Ph. on Ev. 533, note at the bottom; C., H. & E. notes, 4th Am. ed.

The case of *Selvige* v. *The State*, 30 Texas, 64, is the only case that appears in conflict with the rule here contended for. In that case the entire confession was admitted, because the facts were corroborated. But the distinction was not made in that case which we make; and, also, the evidence was controlled by a proper charge.

In the case of *Wilson* v. *The State*, 32 Texas, 116, Justice Lindsay said the circumstances alone, without the confession, were sufficient to sustain a verdict. But this cannot be the law; for, to admit illegal testimony, and then sustain the conviction because there is enough without that which is illegal, would be to deny a man the right of trial by jury. *McWilliams* v. *The State*, 44 Texas, 118.

*H. H. Boone*, Attorney General, and *W. B. Dunham*, for the State.

Ector, P. J.    The defendant was indicted on December 23, 1876, in the district court of Robertson county, charged with the murder of James Monroe on August 19, 1876. He was tried and convicted at the January term, 1877, of said court, and his punishment assessed at death. From that judgment the defendant has appealed to this court, and the errors assigned are:

1st. The court erred in admitting the confessions of the defendant.

2d. The court did not charge the law applicable to the evidence.

We will state so much of the case as is necessary to properly consider the first error assigned. The witness George Brown says he went to the house of the deceased on Sunday morning, August 20, 1876; that he found the deceased,

James Monroe, in a dying condition, and that he died the same day from wounds received on his head (from being bruised and cut). Monroe was lying on a bed, in the middle of the floor, speechless. There was a bloody pair of pants behind the door, two keys lying on the floor, two trunks in the room, one of which was broken open. Neither of the keys would fit the trunks. There was some cotton on the west end of the piazza of Monroe's house, and a dog tied near it. The witness George Brown said that he afterwards suspicioned defendant; that he arrested him on the following evening and took him to Bremond, in Robertson county, where he kept him under arrest until the examining trial was had; that, on the day of the examining trial, defendant took him [witness] into a room, and made several confessions, which he [witness] knew were false; and then, the witness says, the defendant made a confession stating the following facts, viz.: That he [defendant] had killed the deceased; that he threw the pants behind the door; and that the keys would not fit the trunks, so he threw them down on the floor; that when he went to Monroe's house he saw a dog tied on the west end of the gallery, near some cotton; that the dog growled at him, and he went and got a grubbing hoe which he saw lying under the house, and made the dog quiet down; and that he then went into the house and killed the deceased. * * *

The testimony shows that the murder of Maj. Monroe was talked of a great deal in the neighborhood, from the time he was found in a dying condition, on August 19th, for several days, and that defendant could have heard from others the condition in which the deceased and the house were found on the morning he was found in a dying condition. The witness Brown further testified that there was much excitement in Bremond, and a great many people going and coming before and during the examining trial.

To the admission of these confessions, when offered by the

attorney for the prosecution, the counsel for the defendant objected, " because said confessions were not shown to have been the voluntary confessions taken before an examining court, nor made after the defendant had been cautioned that they might be used against him ; nor were sufficient facts found to be true, in connection with said confession, to allow it to be admitted in evidence ;" which objections were over-ruled by the court, because, in the opinion of the court, said facts were found to be true ; and to which ruling the defend-ant excepted and took his bill of exceptions.

Witness Jones says he was sheriff of Robertson county ; that he went to Bremond a few days after the murder, to bring the accused down to jail ; that he found considerable excitement, and the people were threatening to " mob the defendant ;" that he made defendant get into a baggage car, and then he [witness] got into the car and locked it, to keep the men from getting at defendant ; that, while in the car, he told defendant to tell him the truth, and then defendant confessed, and made a similar statement to the one made to the witness Brown.

The record shows that the counsel for the defendant asked the court also to exclude this testimony from the jury, because said confessions were made while the defendant was in the custody of an officer ; and for further reasons, such as were made to the introduction of the confessions of the defendant when the witness Brown was asked to detail them.

This motion of defendant's counsel was overruled by the court (as stated in his 2d bill of exceptions), because, in the opinion of the court, the facts were found to be true ; to which ruling the defendant excepted.

It has long been the law in this state that, before confes-sions can be admitted in evidence, it devolves on the state to show that they were voluntarily made. This is laid down by the rule in the case of *Cain* v. *The State*, 18 Texas, 390. Justice Wheeler, in this case, says : " Observation and expe-

rience have led the most eminent and enlightened judges in the administration of the criminal law to the conclusion—and it has become the established doctrine and rule for the government of courts—that the evidence of verbal confessions of guilt is to be received with great caution."

Mr. Greenleaf lays down the correct doctrine, gives the reason of the rule why such confessions should be received with great caution, and has given ample illustration of its application, in his able treatise on Evidence, to which it will suffice to refer. Greenl. on Ev., ch. 12, " Of Confessions," sec. 214 *et seq.*

The rule of evidence in regard to such confessions is clearly laid down in our Code of Criminal Procedure. Article 3126, Paschal's Digest reads : " The confession of a defendant may be used in evidence against him if it appear that the same was freely made, without compulsion or persuasion, under the rules hereinafter prescribed."

Article 3127 reads : " The confession shall not be used if at the time it was made the defendant was in jail, or other place of confinement, nor while he is in custody of an officer, unless such confession is made in the voluntary statement of the accused, taken before an examining court in accordance with law, or be made voluntarily after having been first cautioned that it may be used against him ; or unless, in connection with such confession, he make statement of facts or circumstances, that are found to be true, which conduce to establish his guilt, such as the finding of secreted or stolen property, or instruments with which he states the offense was committed."

In this case, as we have seen, the court let in the confession of the defendant, because it believed that the defendant, in his confession, stated sufficient facts, that were found to be true, to let in the confession.

In the case of *Warren* v. *The State*, 29 Texas, 372, the court was requested to charge the jury that, if the confes-

sions made by the prisoner were not free, and were made to
relieve himself from anticipated danger, although such
danger did not exist, they must disregard the confessions of
the prisoner, and make up their verdict on the other testi-
mony. The court gave the charge with the qualification
that, " if some of the facts confessed were found to be true
by the other evidence, the jury may consider them all true."
The supreme court reversed the judgment for error in this
qualification, and Donley, J., in commenting upon this
action of the lower court, says: "The instructions were
given with a qualification that did not restrict the jury as to
the character of the facts and circumstances that should be
found to be true in order to authorize them to consider the
confessions of the defendant, made under duress. The facts
or circumstances which are found to be true must be such
facts and circumstances as may conduce to establish the
guilt of the accused."

Under the common-law rules of evidence, though a con-
fession may have been obtained by means of undue induce-
ment, yet if, in consequence of the information obtained
from the prisoner, any fact relative to the offense is
brought to light, such as the discovery of the property
stolen, or the instrument with which the offense was com-
mitted, it is competent to give in evidence the fact that the
stolen property, or the instrument with which the offense was
committed, has been discovered in conformity with the pris-
oner's information. The statement as to his knowledge of
the place where the stolen property, or the instrument with
which the crime was committed, is to be found, being con-
firmed by the fact of their finding, is thus proved to be
true, and not fabricated in consequence of any inducement.
It is competent in such cases, where the common-law rule
of evidence prevails, to inquire whether the prisoner stated
that such articles would be found by searching, and to prove
that they were found, and upon this the jury would have to

consider whether the prisoner, who knew of their concealment, had not himself concealed them, or was privy to it ; but the confession of the crime itself would not be admissible.

We believe that, since the adoption of Article 3127 of our Criminal Code of Procedure (as we have given it), the rule as to the admissibility of such confession has been changed in one respect. In this state, when a prisoner makes a statement of facts, and in consequence of such information the property stolen, the bloody clothes of the defendant, or the instrument with which he says the offense was committed, or any other material fact, is *discovered*, such statement, together with the confession of the crime itself, is proper testimony to go to the jury.

So far as the evidence shows, the defendant, in the statement made to Brown and Jones, did not tell what became of the hoe with which he said he killed Monroe. The confession in regard to the hoe was the only other fact that was not known to all the witnesses independent of the confession of the accused. And there is nothing in the record to show that it has ever since been discovered by reason of the statements made by the prisoner to Brown or Jones.

The state failed to show that the things in and around Monroe's house were not placed in their position by some other person than the murderer. The witness Susan Smith first found the murdered man, and gave the alarm to one Thompson, who was the first person to enter the house on that fatal morning, and the pants themselves may have been placed behind the door by some one else ; and, with the excitement in the neighborhood, it would be very natural that the defendant should hear the condition of Maj. Monroe, and the appearance of the room in which he was murdered, spoken of.

The defendant, at the time he made the confessions which were used against him, was evidently greatly alarmed, and in fear of death from mob violence, and his mind greatly

confused in contemplating the awful condition to which he was exposed, and in a condition, both by word and act, to conform with implicit obedience to the wishes and desires of those from whom he feared the harm.

Mr. Wharton, in speaking of the caution to be used in regard to such confessions, says: "In capital cases these cautions should be applied with peculiar jealousy. It is hardly supposable, it has been well said, that a man possessed of himself would make a confession to take away his own life. It must generally proceed from a promise or hope of favor, or from a dread of punishment; and, in such situation, the mind is agitated—they may be easily tempted to go further than the truth." We believe that the 1st assignment of error made by the defendant is well taken; that the confessions of the defendant should have been excluded from the jury.

When we consider this case in the light of the testimony, when we measure it by the authorities cited by the able counsel for the prisoner, and, most of all, when we remember how material the confessions are, we cannot affirm the judgment of the district court, believing, as we do, that the confessions of the defendant were improperly admitted.

We have given this case that calm consideration which a question of life and death demands. The judgment of the district court is reversed and the cause remanded.

*Reversed and remanded.*